JOHN E. WARREN, *et al.*, Plaintiffs in Error, *vs.* PHINEAS S. FISH, Defendant in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Under the law as it stood February 19, 1858, (*Rev. Stats.*, 1851, *p.* 336-37,) the judgment debtor or owner of land sold on execution, could redeem it from a purchaser who was also a creditor having a lien older than the title under which the redemption is made without paying off such prior lien. A redemption by the judgment debtor or owner simply terminated the sale and restored the party redeeming to his estate, leaving all liens, senior and junior, undisturbed and in full force.

Nothing more is required of a redemptioner to perfect his rights but to file with the sheriff, in his office, the papers required by section 117 of the Statute above cited, and pay over the amount of the purchase, &c.

The following are the facts and conclusions of law as found by James Gilfillan, the Referee, before whom said cause was tried:

That at the City of St. Paul, County of Ramsey and State of Minnesota, on the 25th day of March, 1861, and on divers days thereafter, the parties, Plaintiffs and Defendant, by their respective attorneys, came before me and proceeded with the trial of the cause, and having heard all the allegations and proofs of the respective parties and the arguments of the counsel, and they having submitted the cause for my determination, after due deliberation thereon, I do find in said cause the following facts, to wit:

That on the 5th day of June, 1851, the United States, by patent, duly conveyed to one Alpheus G. Fuller, that piece or parcel of land situated in the county of Ramsey, and Ter-

ritory (now State) of Minnesota, described as the south-west quarter of section No. twenty-one (21) in township No. twenty-nine (29), north of range No. twenty-three (23) west, containing one hundred and sixty acres.

That on the 21st day of August, 1851, said Alpheus G. Fuller and wife, by deed, conveyed said land to Joseph Daniels.

That on the 19th day of July, 1852, Joseph Daniels and wife duly executed to the Defendant, Justus J. McCarty, a mortgage upon said land to secure the payment of the sum of four hundred and sixteen dollars in thirty days from that day, with interest, which mortgage was duly acknowledged and recorded on the same day in the office of said Register in book " B " of mortgages, page 111.

That on the 19th day of August, 1852, said Justus J. McCarty duly assigned said mortgage and the debt thereby secured to the Defendant, Rufus Ingersoll, as Trustee of L. C. McCarty, which assignment was duly acknowledged and recorded on the same day in said office in book " B " of mortgages, page 223.

That on the 17th day of September, 1852, a judgment was duly rendered by the District Court of the First Judicial District of the Territory of Minnesota, in said county of Ramsey, in favor of Perrin Getchell, Plaintiff, and against said Joseph Daniels and one Franklin Wasson, Defendants, for the sum of three hundred and twenty-five dollars and ninety-one cents, which judgment was on that day docketed in said county, and that on the 13th day of November, 1852, there was satisfied of said judgment by sale on execution of the bridge mentioned in the complaint, the sum of fifty-five dollars and thirty cents, and on the 2d day of December, 1852, said Daniels paid on said judgment the sum of fifty-six dollars and seventy-six cents.

That on the 22d day of November, 1852, said Daniels and wife by deed conveyed said land to Plaintiff, who thereby became the owner in fee simple thereof, and said deed was on said 22d day of November, 1852, recorded in the office of the Register of Deeds of said County of Ramsey, in book " D " of deeds, at page 500.

That on the 21st day of December, 1852, the Plaintiff entered into an arrangement with one Thomas B. Winston to sell to him the said land upon condition that Plaintiff could make the title thereto satisfactory to said Winston, and Plaintiff thereupon made, signed, sealed and acknowledged a deed purporting to convey said land to said Winston, and left the same with Isaac Van Etten his (said Plaintiff's) agent to be delivered when said condition was fulfilled, and the purchase price paid. That Franklin Steele acted in said matter as the agent of said Winston, and on or about said day drew a draft on Winston for the purchase price and placed the same in the hands of Edmund Rice with instructions to deliver the same to Van Etten and receive for Winston a delivery of said deed upon a perfect title to said land free from incumbrances being made by Plaintiff. Afterwards Van Etten applied to Rice for said draft to enable him, as alleged by him, to clear off some incumbrances then on the land, and to perfect the title thereto, and said draft was thereon delivered by Rice to Van Etten upon the understanding that it should not be used or negotiated by him until said title was perfected and to secure to Rice the redelivery of said draft in case said title should not be perfected. Van Etten gave to him his individual bond or obligation with that condition, and Van Etten at the same time deposited with Rice said deed upon the agreement and understanding between them that it should be held by Rice as an escrow and not be deemed delivered until the title to the land was made perfect, and a certificate of the proper officer showing that fact produced to Rice, and if said certificate should not be so produced, then Van Etten should return the draft and the whole thing go for nothing; that the title to the land never was made perfect, and no such certificate was ever produced to Rice, and Van Etten having failed and neglected to return the draft, Rice, supposing that it would aid in securing Winston, and with that purpose, but without the knowledge or consent of Winston, or of Plaintiff, caused such deed to be recorded, and the same was on the 27th day of December 1852, recorded in the office of said Register of Deeds in book "E" of deeds, page 86; that the purchase price was never paid to Plaintiff, but the proceeds of said

draft were afterwards repaid by Van Etten to Winston, and said deed never was delivered to Winston otherwise than above stated, and he, when informed of the acts and doings of said Rice in the premises, refused to ratify or approve the same.

That on the 1st day of December, 1852, the Plaintiff in the above mentioned judgment caused an execution thereon to be issued out of said Court in the form required by law under the seal of said Court tested on that day, and delivered the same to the sheriff of said county for service. That said execution was not subscribed by said Plaintiff in said judgment nor by any attorney for him, but the name of Isaac Atwater, the Plaintiff's attorney in the action in which said judgment was recovered, was subscribed to said execution by the Clerk of said Court, and said Atwater adopted such subscription by endorsing his name on said execution.

That said sheriff immediately duly levied said execution upon said land as the property of said Daniels, and also upon the other real estate described in the complaint, which was then owned by said Daniels, and after advertising said land for sale according to law, did, on the 27th day of January, 1853, in obedience to the command of said execution, sell said lands at public vendue to Rufus Ingersoll as Trustee of L. C. McCarty, the wife of Justus J. McCarty, for the price of three hundred and thirty dollars, he being the highest bidder, and that being the highest sum bid therefor, and also sold the other several pieces of lands described in the complaint, to the several persons and at the several prices therein mentioned, and gave and recorded certificates of said sale of said lands according to law.

That in the return of said sheriff upon said execution, the land first hereinbefore mentioned is not fully and correctly described. That the only description of land in said return in any respect corresponding with the description of the lands hereinbefore first mentioned is as follows, to wit: the south-west quarter of section No. 21 north, of range 23 west; that said land was correctly described in the sheriff's said certificate of sale. And on the 30th day of April, 1853, said sheriff executed to said Rufus Ingersoll, trustee as aforesaid, a sheriff's

deed of said real estate, with a correct and proper description thereof.

That on the 19th day of February, 1853, the Plaintiff, for the purpose of redeeming said land from said sale, the same not having been redeemed by any person, served upon said sheriff a notice in writing in words and figures following, to wit:

TERRITORY OF MINNESOTA, RAMSEY COUNTY, }
District Court, First Judicial District. }

PERRIN GETCHELL *vs.* JOSEPH DANIELS and FRANKLIN WASSON.

*To the Sheriff of Ramsey County:* Take notice that I will redeem the following described premises and land to-wit: the south-west quarter of section number twenty-one, township twenty-nine, north of range twenty-three west, sold by you on the 27th day of January, 1853, to satisfy a judgment entered against Defendants in the above cause, and in favor of the above Plaintiff, on the 17th day of September, 1852, before the time for redemption expires.

PHINEAS S. FISH.

Saint Paul, February 15th, 1853.

And also at the same time served on said sheriff a duly certified transcript of the said judgment, a copy of said deed from Daniels and wife to him, duly verified by his affidavit, and this affidavit subscribed and sworn to by him before the clerk of said Court, which affidavit stated that Plaintiff had purchased said land from said Daniels, on the 22d day of November, 1852; that said land had been sold by the sheriff, on said execution, as hereinbefore stated, and that the amount due upon the lien of said sale was the sum of three hundred and thirty dollars, interest and increased costs, and also at the same time paid said sheriff in gold and silver coin the sum of three hundred and thirty-one dollars and thirty-seven cents, as and for the redemption money upon said sale, and the same was so received by said sheriff; and said papers so served on said sheriff, were, on said 19th day of February, 1853, filed in the office of said sheriff.

That L. C. McCarty, hereinbefore named, was the wife of Defendant, Justus J. McCarty, and she died prior to the 6th day of

September, 1854, leaving issue of said marriage the Defendant, Rufus Halsey McCarty, a minor, of whose estate, including the land derived as heir at law of his mother, the Defendant, Justus J. McCarty, was duly appointed guardian by the Probate Court of the said county of Ramsey. That on the 6th day of September, 1854, by power of attorney by him then duly executed, and duly acknowledged and delivered to Geo. L. Becker, and duly recorded on the 21st day of November, 1854, in the office of said register of deeds, the said Justus J. McCarty, guardian of Rufus Halsey McCarty, authorized and empowered the said George L. Becker to sell and convey the said land.

That on the 22d day of September, 1854, the said Justus J. McCarty was, by an order of the Probate Court of said county, duly made in proceedings therein for that purpose, licensed to sell the said land as guardian of the estate of said Rufus Halsey McCarty, and having given public notice of the intended sale, by causing notification thereof to be advertised as required by law, said land was sold on the 14th day of October, 1854, at public sale, to the Defendant, John Esaias Warren, he being the highest bidder; that said Justus J. McCarty was present at said sale, and agreed with said Warren upon the terms thereof, and on the 21st day of November, 1854, pursuant to said sale, said George L. Becker, as attorney of said Justus J. McCarty, executed in his name as such guardian, a deed or conveyance of said land to said Warren, which deed was duly acknowledged and recorded on said 21st day of November, 1854, in the office of said register of deeds; that at the commencement of the action Plaintiff was in the actual occupancy of said land.

That each and every allegation of fact contained in the pleadings in said cause, except as hereinbefore found, is untrue.

And I found as conclusions of law, from the foregoing facts, the following, to wit:

That said execution was a regular and valid execution.

That the levy and sale by said sheriff, under said execution, of the real estate first hereinbefore described, was regular and valid.

That said deed made by Plaintiff, and placed in the hands of said Van Etten, and by him deposited with said Rice, as hereinbefore stated, never became operative as a deed, and did not convey said real estate from Plaintiff to said Winston, and that the Plaintiff had the right to redeem said real estate so sold.

That said redemption by Plaintiff was regular and valid, and annulled and vacated said sale by said sheriff, and discharged said land from said sale and the lien of said judgment.

That said guardian sale to Defendant, Warren, was regularly and legally made, and with the said deed to said Warren, conveyed to him all the title and interest which said Rufus Halsey McCarty and said Justus J. McCarty had in or to said land.

And that Plaintiff is entitled to a judgment or decree in this cause ; that the said deed by said sheriff to Rufus Ingersoll, be cancelled and declared as against this Plaintiff as null and void ; that the said deed from said Justus J. McCarty, guardian, to said Defendant, Warren, be cancelled and declared null and void as against this Plaintiff, and that the Defendants, and each of them, be cut off, barred and excluded from any claim, right, title or interest, of, in or to the southwest quarter of section number twenty-one, (21), township number twenty-nine, (29), north of range number twenty-three (23) west, and every part thereof, and I direct judgment so to be entered. All of which is respectfully submitted.

Judgment was entered upon the report, and the Defendants review by writ of error.

Points and Authorities of Plaintiff in Error.

I.—There was no record notice of the redemption which the Defendant in Error sets up to avoid the title of Warren, the Plaintiff in Error. *Crocker on Sheriffs, p.* 227 ; 2 *N. Y. R. S., 4th Ed., sec.* 77, *p.* 622 ; *R. S. Minn.,* 1851, *secs.* 115, 117, *p.* 367; *Crocker on Sheriffs, sec.* 521, *p.* 225, *and authorities cited in note.*

II.—The sheriff's vendee, from whom Fish claimed to have redeemed, had a prior lien by mortgage, the amount of which should have been included in the redemption money under the facts,—Fish not being the judgment debtor, but a "redemptioner" under the statute. *Sec.* 44 *of Amendments R. S. Minn.*, 1851, *p.* 12; *sec.* 115. *p.* 367, *R. S. Minn.*, 1851; and the New York authorities are not applicable to this point. *Sec.* 500, *p.* 216, *Crocker on Sheriffs.*

III.—The deed from Fish to Winston was, under the facts, delivered when Rice placed it on record, Rice being Winston's agent, and therefore Fish had no title to redeem. *Lawton vs. Sager,* 11 *Barb.*, 349, *and authorities there cited; Hatch vs. Hatch,* 9 *Mass.*, 307.

IV.—Under the statutes of Minnesota, recording a deed is tantamount to delivering, so far as to divest the title of the grantor. *Comp. Stats.* 1858, *secs.* 1, 3, *chap.* 35, *p.* 397.

Points and Authorities for Defendant in Error.

I.—Fish was the owner of the land at the time of redemption.

The alleged deed to Winston was only left with Mr. Rice in escrow, who had no authority to deliver until the conditions were performed. Rice was not the agent of Fish or Winston, and the recording of the paper was wholly unauthorized. It was never delivered, and the recording is only *prima facie* evidence of delivery, which may be rebutted by proof. 23 *Wend.*, 43; 10 *Met.*, 458; 16 *Vermont*, 564; 2 *Wend.*, 318.

II.—The redemption by Fish was regular; due notice was given.

The sheriff is agent of both parties, and notice filed in his office is notice to all persons interested. *Revised Statutes, p.* 367.

III.—The judgment debtor or owner of the fee is not required to pay liens, as a condition of redemption, to the purchaser at the sale. There are but two classes entitled to redeem,—

1st. The debtor, if he continue the owner of the land, or, in case of conveyance by him, his successor in interest.

2d. All lienholders.

A redemption by class one, (no creditor having previously redeemed), is made by paying the amount of the bid for which the property sold, with interest. By such redemption the sale is avoided, leaving all the liens unimpaired.

A redemption by class two continues the effects of the sale; and substitutes the redemptioner for the purchaser. *R. S.* 1851, *p.* 367; *Bodwin vs. Morse,* 18 *N. Y.,* 347; 1 *Cow. Rep.,* 501, 443.

IV.—The purchaser at sheriff's sale acquires only a specific lien upon the property. He is entitled to have that lien, to the amount of his bid, paid off. If he has a lien it must be notified. Such lien, in order to entitle it to payment, must be a lien superior to the lien of the redemptioner. 7 *Cow.,* 540; 4 *Barb. S. C.,* 159.

HORN & GALUSHA, with J. B. BRISBIN, Counsel for Plaintiff in Error.

JAMES SMITH, Jr., Counsel for Defendant in Error.

*By the Court—*FLANDRAU, J.—This case turns upon the validity of the redemption made by Mr. Fish, of the lands, on the 19th of February, 1853. He was the grantee of the judgment debtor, and the owner of the land, subject only to the rights of the purchaser, at the sale on execution, and the lien of the McCarty mortgage. He cannot be said to have had a lien upon the land. He was the owner of the fee. A redemption by him did not have the effect of transferring to him the rights of the purchaser, subject to be defeated by other redemptioners; it terminated the sale, and restored him to his estate exactly as it was before the sale took place, except that the judgment upon which the sale was made was satisfied. All other liens, prior and subsequent, remained unimpaired. We do not think Fish was obliged to pay off the McCarty mortgage, held by Ingersoll, when he redeemed. Had he been a redemptioner by virtue of a lien subsequent to that of the McCarty mortgage, he would of course have been compelled to pay it off. *Revised Stats.* 1851, *p.* 367, *secs.* 114–15.

All the papers required by the statute, were filed by Fish with the sheriff. He was not obliged to notify any one else of his redemption. The sheriff, by paying over the money to the purchaser immediately, is presumed to notify him of the fact of the redemption having taken place.

There is nothing in the point that the title was in Mr. Winston at the time the redemption was made by Fish. The negotiation was never consummated so as to pass the title out of Fish. The recording of the deed by Mr. Rice was unauthorized, and never sanctioned by Winston. The conveyance by Winston back to Fish afterwards, was probably done to save trouble and clear up the face of the record.

It is difficult to understand why the sheriff should have executed the deed to Ingersoll, after receiving the redemption money from Fish, and filing the redemption papers in his office, or why Ingersoll should have accepted the deed, unless it is upon the supposition that the sheriff did not pay over the money, and thus convey to him knowledge that the redemption had been made.

The statutes are exceedingly defective in not providing for some record being made of the fact of a redemption having taken place, in the clerk's office, where the record of the judgment is kept, and the most difficult question that is presented by this case is, whether Mr. Warren, who has purchased in perfect good faith, with a clear record in both the register's and the clerk's office, should be chargeable with notice of this redemption, merely by reason of the filing of the papers in the sheriff's office. In examining the rights of Mr. Warren, and the hardships to which he may be subjected, we must not forget the rights of Mr. Fish. The latter, in redeeming the land complied with the law strictly, and could not have done more had he desired. He had reason to suppose that the money would at once be paid to Ingersoll, the sale terminate, and he be restored to his estate. He, therefore, is perfectly regular and innocent. Mr. Warren, on the other hand, was probably thrown off his guard by the sheriff's deed to Ingersoll, from searching the sheriff's office for redemptions. Ingersoll being the purchaser, a deed to him necessarily precludes the idea of intermediate redemptions.

The misconduct of the sheriff has led to all the mischief, yet we do not see how the rights of Mr. Fish, long previously acquired, can be divested thereby.

The judgment will have to be affirmed.

NOTE.—Chief Justice Emmett being interested in this case, took no part in the decision. Judge Atwater having, as attorney for the judgment creditor, issued the execution upon which the sale was made, declined to sit in the case until requested by all the counsel on both sides, when he consented.