FREDERICK P. BURGETT *et al.*

*v.*

JOHN S. PAXTON *et al.*

*Filed at Ottawa May 16, 1881.*

1. BANKRUPTCY—*what estate the assignee takes, as against third persons.* An assignee in bankruptcy and all persons claiming under him, succeed only to such rights as the bankrupt himself had at the time of the adjudication, and land bought at the assignee's sale passes the bankrupt's interest, subject to all liens by mortgage or judgment against him.

2. SAME—*redemption from prior mortgage by one claiming through a sale by the assignee—effect upon a junior judgment lien.* A judgment at law became a lien upon the debtor's land, subject to a pre-existing mortgage. Subsequently the debtor was declared a bankrupt, and the land was sold by the assignee in bankruptcy. A remote claimant under the sale by the assignee redeemed from a sale under the mortgage. It was *held*, the only effect of such redemption from the mortgage sale was to defeat the title of the purchaser under it, and leave the premises subject to the lien of the judgment, in the same way as if the redemption had been made by the bankrupt (the mortgagor) himself.

3. SAME—*judgment after bankruptcy of debtor, becomes no lien on his lands.* A judgment recovered against a person after he is adjudged a bankrupt, becomes no lien upon the lands of the bankrupt.

4. SATISFACTION—*of one of two judgments rendered for the same demand— purchaser—recording act.* It does not follow, where two judgments have been obtained, in part against different parties, on account of the same claim, that a satisfaction of one is necessarily a satisfaction of the other, within the meaning of our recording laws.

5. Where there are two judgments for the same demand, the second being upon an appeal bond given in the first case, and the records, by an erroneous entry, show the satisfaction of the latter judgment only, a purchaser of land of the judgment debtor will buy at his peril. The records must affirmatively show a satisfaction of both judgments, or there must be an actual satisfaction and discharge of both, before a purchaser may safely buy.

6. PURCHASER—*must have paid, to be protected.* A purchaser of land who has not paid or advanced anything on his purchase, can not claim protection as an innocent purchaser, except so far as the parties through whom he claims may have equities.

7. SAME—*with notice of lien.* If an execution issued upon a judgment is erroneously returned, by inadvertence or mistake, as satisfied, and an entry of satisfaction is entered upon the judgment and execution dockets, a purchaser of land which is subject to the lien of such judgment, who has notice that such judgment is not in fact satisfied, will take subject to such lien, and can not have a sale under the judgment enjoined.

8. SUBROGATION—*of surety paying judgment.* Where there are two judgments against a party for the same debt, the last one being upon an appeal bond given by him on appeal from the first judgment, his sureties on the appeal bond, on paying the last judgment, will be subrogated to the rights of the holder under the first judgment, and in such case, notwithstanding the satisfaction of the second judgment, the first one will continue in force for the benefit of the sureties.

9. ADMISSION—*by the pleadings.* The admission of certain facts, in a bill in chancery, must be taken as true against the complainant.

10. NOTICE—*lis pendens.* Where notice has been served upon a·defendant of an application to have set aside an entry of satisfaction of the judgment against him, on the ground of its entry by inadvertence and mistake, and the papers and motion to set aside are on file in the court before the purchase of the land by a third person, he will be chargeable with notice *lis pendens.*

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Mercer county; the Hon. J. J. GLENN, Judge, presiding.

19—99 ILL.

Mr. B. C. TALIAFERRO, and Messrs. PEPPER & WILSON, for the appellants:

Where a judgment is rendered, and another judgment is recovered upon an obligation given as collateral security for the first judgment, the payment of either judgment discharges the other. Freeman on Judgments, sec. 467; *Sherman* v. *Britt,* 7 Wis. 119; *Sanderson* v. *Smith,* 9 Wend. 54; *Meller* v. *Whittaker,* 5 Hill, 409; *Schroeppel* v. *Jewell,* 1 Cow. 208; *McGrunty* v. *Herrick,* 5 Wend. 241; *Thompson* v. *Perceville,* 5 B. & Ad. 925; *United Society of Shakers* v. *Underwood,* 21 American Rep. 214; *Craft* v. *Merrill,* 14 N. Y. 456.

*Lis pendens* is restricted to parties purchasing from or holding under parties connected with the suit. Freeman on Judgments, secs. 191 to 197, and 209; *Jackson* v. *Warren,* 32 Ill. 331; *Loomis* v. *Riley,* 24 id. 307. See, also, *McCormick* v. *Wheeler,* 36 id. 120; 81 id. 443; 89 id. 51.

Where a judgment has been entered satisfied on record, the entry of satisfaction can not be subsequently vacated to the prejudice of a *bona fide* purchaser. That purchasers may rely on what the public records show, counsel cited *Beebe et al.* v. *Bank of New York,* 1 Johns. 529; *McCormick* v. *Wheeler et al.* 36 Ill. 116; *Page* v. *Benson,* 22 id. 484; *Curtis* v. *Root,* 28 id. 367; *Shirley* v. *Phillips,* 17 id. 471; *Brown* v. *Brown,* 49 id. 316; *Church* v. *English,* 81 id. 443; *Steele* v. *Steele,* 89 id. 51.

As to the right of subrogation, counsel cited *Bishop et al.* v. *O'Conner et al.* 69 Ill. 431; *Harts* v. *Brown,* 77 id. 226; *Conwell* v. *McCowan,* 81 id. 285; *Jaques* v. *Fackney,* 64 id. 87; *Valle's Heirs* v. *Fleming's Heirs,* 29 Mo. 152; *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370; *Funk* v. *McReynolds,* 33 Ill. 481; *Honore* v. *Lamar Fire Ins. Co.* 51 id. 409.

No one but the sureties can claim the right of subrogation, and they not claiming it, Burlingame can not. *Hayes* v. *Ward,* 4 Johns. Ch. 123; *N. Y. State Bank* v. *Fletcher,* 5 Wend. 85; *Lond* v. *Sergent,* 1 Edw. Ch. 164; *McLean* v.

*Towell,* 3 Sandf. Ch. 117; *Ottmon* v. *Moak,* id. 431; *Law* v. *Palmer,* 28 N. Y. 271.

Mr. J. M. H. BURGETT, and Messrs. LAWRENCE, CAMPBELL & LAWRENCE, also for the appellants, made the following, among other points:

A stranger paying the debt of another will not be subrogated to the creditor's rights without a special agreement. *Swan* v. *Patterson,* 7 Md. 164; *Bank of U. S.* v. *Marston,* 2 Brock. 254; *Burr* v. *Smith,* 21 Barb. 262.

Such payment absolutely extinguished the debt and security. *Sandford* v. *McLean,* 3 Paige, 117; *Banta* v. *Garno,* 1 Sandf. 384; *Wilkes* v. *Harper,* 1 Comst. 586; *Bank of U. S.* v. *Winston's Exrs.* 2 Brock. 253; *Douglass* v. *Fagg,* 8 Leigh, 588.

As subrogation is an equity, it will not be enforced where the effect will be to prejudice or impair the rights of third persons, it being well settled that where both parties have an equal claim to the consideration of a court of equity, the law will be suffered to take its course. 2 Lead. Cases in Equity (4th Am. ed.) 285.

Subrogation will never be enforced against the superior equities of third persons. 1 Lead. Cases in Equity (4th Am. ed.) 152.

Though the right of subrogation may exist as against the principal debtor, it can not be enforced against a purchaser for value without notice. *Reilly* v. *Mayer,* 2 Beasley, 451; *Williams* v. *Washington,* 1 Dev. Eq. 137; *Orvis* v. *Newell,* 17 Conn. 97; 2 Lead. Cases in Equity (4th Am. ed.) 285, 286; Dixon on Sub. 110, 111, 116, 178, 43, 44, 101, 51, 93, 78.

Where a person is so related to a mortgage that he is not personally liable on it, but is obliged to pay it to save his estate, and he does pay it, the payment will be presumed to be made for that purpose. In such case no assignment of the mortgage to the person paying it, or proof of intention on his part to keep it alive, is necessary to give him the ben-

efit of it. This general rule is applied in all cases where the person against whom the mortgage is understood to be kept on foot would be placed in no worse situation than he would have been had the mortgage been left outstanding. *Walker* v. *King*, 44 Vt. 601; *same* v. *same*, 45 id. 525; Jones on Mortgages (2d ed.) secs. 869, 877; *Muir* v. *Berkshire*, 52 Ind. 149; *Valle's Heirs* v. *Fleming's Heirs*, 29 Mo. 152; *Young* v. *Morgan*, 89 Ill. 199; *Worcester Nat. Bank* v. *Cheeney*, 87 id. 602; *Barnes* v. *Mott*, 64 N. Y. 397; *Green* v. *Milbank*, 3 Abbott, N. C. 138; *Breese* v. *Nelson*, 35 Iowa, 157.

Mr. LOUIS D. HOLMES, and Messrs. CLARK & HEYWOOD, for the appellees:

The effect of Burgett's redemption from the sale under the prior mortgage was merely to terminate the sale and restore the property to its original condition. It conferred no new rights. Rorer on Jud. Sales, 435; *State* v. *Sherill*, 34 Ind. 57; *Crosby* v. *Elkader Lodge*, 16 Ia. 399; *Hays* v. *Throde*, 18 id. 51; *Stein* v. *Chambers*, id. 474; *Warren* v. *Fish*, 7 Minn. 432; *Titus* v. *Lewis*, 3 Barb. 70.

As to the filing of notice of application to have entry of satisfaction vacated, being notice as *lis pendens*, counsel cited *Jackson* v. *Warren*, 32 Ill. 240; *Scudder* v. *Van Amburg*, 4 Edw. Ch. 29; *Center* v. *P. and M. Bank et al.* 22 Ala. 743; *Coperheamer* v. *Huffaker*, 6 B. Mon. 18; *Jackson* v. *Mosler*, 32 Ill. 331.

As between principal and surety, subrogation takes place when the surety pays the debt, and this to avoid multiplicity of suits. *Bishop et al.* v. *O'Conner*, 69 Ill. 437; *Conwell* v. *McCowan*, 81 id. 287; *Jaques et al.* v. *Fackney*, 64 id. 87; *City National Bank* v. *Dudgeon*, 65 id. 15; *Floyd* v. *Goodman*, 8 Yerg. 484; *King et al.* v. *Aughty et al.* 3 Strobh. Eq. 149; *Sommerhill* v. *Cartwright*, 7 Humph. 461; *State* v. *Mosely*, 1 Strobh. 414; *Herok* v. *Kimball*, 2 Blackf. 309; *Hodges* v. *Armstrong*, 2 Dev. 254; *Barringer* v. *Boyden*, 7 Jones, 187.

That the entry of satisfaction of the second judgment did not operate to satisfy the first judgment, counsel cited *Stiles* v. *Eastman et al.* 1 Kelly, 205; *Wilson* v. *Wright,* 7 Rich. 401; *Poe, Sheriff* v. *Darrah,* 20 Ala. 288; *Lintz* v. *Thompson,* 1 Head, 456; *Smith* v. *Alexander,* 4 Sneed, 482.

If anything appears upon the record, or comes in any manner to the knowledge of a party, which, if seen or known to a man of ordinary intelligence, would be likely to create a suspicion or raise a question as to the title he was about to take, it is notice of everything that could be learned relating thereto by diligent inquiry. *Doyle* v. *Teas,* 4 Scam. 202; *McConnell* v. *Reed,* 4 Scam. 123; *Rupert* v. *Mark,* 15 Ill. 541; *Errickson* v. *Rafferty,* 79 id. 209; *Merrick* v. *Wallace,* 19 id. 486; *Ogden* v. *Haven et al.* 24 id. 29; *Shepherdson* v. *Stevens,* 71 id. 646; *Harper et al.* v. *Ely et al.* 70 id. 581.

A joint judgment, or two several judgments, may be paid as to the creditor, and kept alive by assignment for the assignee's or the surety's benefit. Freeman on Judgments, 468; *Hodges* v. *Armstrong,* 3 Dev. 254; *Burley* v. *Sagg,* D. & B. Eq. 367.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was a bill filed by Peter Johnson, Ellen Johnson and Frederick P. Burgett, in the Mercer county circuit court, on the 23d day of July, 1878, against Frank H. Bernard, and John S. Paxton, sheriff of the county, enjoining the sale of certain real estate under a judgment in favor of the said Bernard, and against Wells Willets and others, the judgment having been previously assigned by Bernard to S. C. Burlingame. The latter, on his own petition, was made party defendant to the suit. Upon the hearing, the circuit court entered a decree dismissing the bill, which, on appeal, was affirmed by the Appellate Court for the Second District. Appellants thereupon prosecuted an appeal to this court, which was heard at the March term, 1880, resulting in an

affirmance of the judgment of the Appellate Court. A rehearing having been subsequently granted, the case is now before us for final determination.

The legal questions involved in the present controversy, and which are presented for our determination, arise out of a rather complicated state of facts.

On the 1st of November, 1871, Wells Willets, being the owner of the lands in controversy, mortgaged the same to Ewing & Co. On the 8th of December, 1875, Frank H. Bernard recovered a judgment against Willets and others, which became a lien on the premises, subject to the mortgage. On appeal to the Supreme Court by Willets alone, the judgment was affirmed by this court, on the 27th of October, 1876. This judgment remaining unpaid, Bernard instituted a suit against Willets, and his sureties, J. O. Willets and C. Drury, on the appeal bond, in which, on the 4th of December, 1876, he recovered a judgment against all the defendants for the amount of the former judgment, interest, etc. In the month of July, 1876, and pending the appeal from the first judgment, Wells Willets was adjudged a bankrupt, and J. M. Mannon was appointed his assignee in bankruptcy. On the 31st of January, 1877, Bernard, for a valuable consideration, sold and assigned to S. C. Burlingame both of the above mentioned judgments. Bassett & Wharton, the attorneys of Bernard, in obtaining these judgments, had notice of the assignments, and were at the same time paid for their professional services in the two cases, and thereupon ceased to have any further power or control over them.

The assignment of the first judgment was filed for record on the 12th of December, 1877, and of the latter on the 2d of October, 1878. On the 13th of January, 1877, an execution was issued on the latter judgment, which, without any authority from Burlingame, or any one authorized to act on his behalf, and without anything having been paid thereon, was, on the 3d of March following, through inadvertence or misapprehension, without any fault or negligence on his part,

returned satisfied. Burlingame, as soon as the mistake was discovered, to-wit, on the 30th of July following, caused the defendants in the judgment to be served with notice that application would be made at the following August term of the court, to correct said erroneous return. In pursuance of the notice, a motion for the purpose in question, supported by affidavit, was, on the 15th of the month, and during the August term of the court, duly filed in the cause, together with a copy of the notice served upon the defendants.

On the 4th of December following, the court, upon the hearing of the motion, entered an order cancelling all entries on the record indicating a satisfaction of such judgment. On the 2d of June, 1877, Mannon, the assignee of Wells Willets, sold at public sale the land in controversy, and Rachel C. Willets, wife of Wells Willets, became the purchaser, and a conveyance of the premises was executed to her by the assignee on the 25th of the following month.

On the 14th of September, 1877, Rachel C. Willets conveyed the premises to Frederick P. Burgett, who, on the 11th of November following, conveyed the same, by warranty deed, to Peter and Ellen Johnson. On the 31st of May, 1877, the premises in question were sold under the mortgage of Ewing & Co., and Burgett, on the 24th of April, 1878, for the purpose, as is claimed, of protecting himself against the covenants in his deed to the Johnsons, redeemed from that sale. On the 28th of June, 1878, Burlingame sent out an alias execution on the original judgment, and was proceeding to obtain satisfaction of the same out of the lands in question when the present bill was filed, for the purpose already stated.

The foregoing comprises all the facts material to a proper understanding of the legal questions involved, with the exception of some minor details, which will be adverted to in the further consideration of the case.

It is clear, from the foregoing state of facts, that if no judgment had ever been obtained on the appeal bond, Burlingame would have an unquestionable right to have the

original judgment satisfied out of the land in question, for it is not claimed that there has ever been any satisfaction, either in form or fact, of that judgment. Nor would the fact that Burgett redeemed from the sale under the mortgage of Ewing & Co., affect Burlingame's rights in this respect, although the mortgage was a prior lien on the premises.

The mortgage of Ewing & Co. and the first judgment were existing liens on the land at the time Wells Willets was adjudged a bankrupt, and it is very clear that his assignee succeeded only to such rights with respect to the land as the bankrupt himself had at the time of his bankruptcy, and it will not be pretended that Willets himself could have acquired any new right which would have been available as against the owner of the first judgment, by simply paying off the mortgage or redeeming from the mortgage sale; and since he could not, neither could his assignee in bankruptcy, or any one claiming under such assignee. It follows, therefore, that the only effect of Burgett's redemption from the mortgage sale was to defeat the title of the purchaser under it, and leave the premises subject to the lien of the judgment, in the same way as if the redemption had been made by Willets himself. The view here expressed, is distinctly recognized in the late case of *State* v. *Sherill*, 34 Ind. 57; *Crosby* v. *Elkader Lodge*, 16 Ia. 399; *Hays* v. *Throde*, 18 id. 474; *Warren* v. *Fish*, 7 Minn. 432; *Titus* v. *Lewis*, 3 Barb. 70.

As the second judgment was not rendered until after the bankruptcy of Willets, it never became a lien on the land, and hence it follows, if the entry of satisfaction of the second judgment in the manner we have stated did not in law have, as to appellants, the effect of satisfying the first judgment, it is wholly immaterial, so far as the rights of Burlingame are concerned, whether the second judgment be regarded as satisfied or not.

The vital question in the case, then, is, did the return of the execution on the second judgment, satisfied, together with the

entries of satisfaction on the judgment and execution dockets, authorize appellants to treat the first judgment as satisfied,— or, in other words, did the return and entries in question as to the appellants, *ipso facto*, discharge the lien of the first judgment? Appellants earnestly insist that such was their effect. This conclusion is reached in the following manner:

*First*—It is said that if there be two or more judgments for the same debt, the satisfaction of one is a satisfaction of the others.

*Second*—That under our recording system, where the real facts affecting the title of a purchased estate are not disclosed by the record, the rights of the purchaser are not to be determined by the facts as they actually exist, but as they appear to exist from the public records.

By way of application of these two general propositions to the case in hand, it is insisted, that inasmuch as the court records at the time of Mrs. Willets' purchase at the assignee's sale showed that the second judgment was satisfied, and that an examination of the files of that case would have led to a discovery of the fact that both judgments were for the same debt or demand, she had the right to assume that both judgments were satisfied, and that having acted on that hypothesis, she and those claiming under her are entitled to hold the land discharged of the lien, whether the judgment, in point of fact, was discharged or not. This position we do not regard as sound, for a number of reasons. It is to be observed, in the first place, that so far as the rights of the Johnsons are concerned, they depend altogether upon the equities of Mrs. Willets and Burgett, whatever they may be. It is not claimed or pretended that the Johnsons have ever paid or advanced anything on account of their alleged purchase, and it is clear, therefore, they have no equities with respect to the land in controversy, except such as they may have acquired through Mrs. Willets or Burgett, or both. It will be remembered that the erroneous return of the execution and entries upon the judgment and execution dockets, showing a satis-

faction of the judgment on the appeal bond, were made on the 3d of March, 1877, and hence were matters of record at the time of the assignee's sale, which occurred on the 2d of June, following. It is claimed by appellees, that, notwithstanding the erroneous entries in question, the land in controversy was sold by the assignee subject to the judgment, and that it was so publicly stated by him at the time it was exposed to sale and purchased by Mrs. Willets. Burgett was present at the time, and hence both he and Mrs. Willets are chargeable with notice of what was publicly said by the assignee at the time of making the sale, with respect to incumbrances on the property, whether they now remember it or not; and it is clear, if, as is claimed, they had express notice of the fact that notwithstanding the erroneous entries the judgment was, at the time of the sale, an existing lien on the land, then neither she nor Burgett, under the circumstances, could be regarded as an innocent purchaser. Conceding the facts to be as claimed by appellees, this conclusion is not controverted by appellants, but they deny, as a matter of fact, that the land was sold subject to the judgment, or that anything was said at the sale with respect to it.

The evidence upon this question is conflicting, and that it is so is not to be wondered at. The character of the question is such, that men equally conscientious and honest might reasonably be expected to differ in their recollection of the facts concerning it. The value of one's testimony as to what transpires at a public sale like the one in question, depends so much upon the interest he has in knowing what is being done, and the degree of attention given to the subject, it is often difficult to tell just what credit the witness is entitled to. Burgett, Pepper, Connell and Orth were examined as witnesses, on behalf of appellants, upon this question. Burgett testifies, "the lands were simply sold subject to incumbrances; that the assignee said nothing about judgments; that he was standing within five or ten feet of the assignee, and was paying attention to what was said." Pepper states that Mannon

read the terms of the sale; that he made no statement about
any particular incumbrance; said he would state the incum-
brances on each tract as it was offered. In other respects
his testimony is substantially the same as Burgett's. Connell
testifies that Mannon stated the terms of the sale, and said he
would mention the incumbrances as he went along; that he
did not mention specific liens or judgments; that he did not
hear anything of the kind; that he was near, and did not hear
anything about the Bernard judgments. Orth states that he
was at the sale for the purpose of buying land, and paid par-
ticular attention to what was said, and that there was nothing
said about judgment liens, but that there was about mortgages
and taxes; that nothing was said about the Bernard judg-
ment; that the assignee "had a list of the liens and incum-
brances, and made known the incumbrances against the separate
tracts as they were offered;" that he was not there during the
entire sale,—only about two hours.

While these witnesses agree in the statement that the
assignee said nothing about judgments, and particularly
about the judgment in question, or at least that they heard
nothing said in reference to it, yet their statements in other
particulars are not altogether harmonious. For instance,
Burgett testifies that the lands were simply sold subject to
incumbrances, while all the others agree in the statement
that the assignee, in making known the terms of the sale,
distinctly announced that, as he offered each tract for sale, he
would state the incumbrances upon it; and while Pepper and
Connell both testify that no particular incumbrance or lien
was mentioned by the assignee, Orth, on the other hand,
swears that the assignee had a list showing the incumbrances
on the various tracts sold, which were made known as they
were respectively offered for sale, among which were certain
mortgage and tax liens. When this testimony, coming from
the source it does, is taken in connection with the uncontro-
verted fact that such a list of the lands, with the incum-
brances thereon, was made out under the directions of the

assignee for the express purpose of being used at the sale, and that the judgment in question was noted thereon as an incumbrance on all the bankrupt's lands in the county, including the land in controversy, it is difficult to repel the conviction, even in the absence of all evidence on the part of appellees bearing on the question, that the assignee must have given notice of this judgment at the sale. The evidence shows that Bassett was employed as an attorney by the assignee to assist in getting up a list of the incumbrances, and in superintending the sale of the lands, and that he was engaged several days in the performance of these duties. Why incur the expense of getting up such a list, under the supervision of counsel, if it was not to be used?

It was clearly the duty of the assignee to make known to those attending the sale, so far as he was able, the extent and character of the incumbrances, and it is hardly reasonable to suppose he would have withheld from them such information, with lists then in his hands, furnished at the expense of the bankrupt's estate, containing the very information he was in duty bound to give. It is clear, beyond all question, that, so far as mortgage and tax liens are concerned, they were specifically mentioned before and during the sale. Why mention them and not the judgments? Both were on the lists, and it was just as important to the purchaser to be advised of the one as the other, and it was not the slightest trouble for the assignee to give the requisite information in either case, and he was under as much obligation to give it in the one case as the other.

But, outside of all this, there is clear and positive testimony that the judgment in question was expressly mentioned by the assignee at the time of the sale as an existing incumbrance on the land. Mannon, the assignee, testifies: " I think I made statement that there were certain incumbrances,—that is what these papers were got up for.  *   * Think I advised them of taxes and judgments. When I offered a tract, I think I announced the lien set opposite in

the list. I think judgments were mentioned, but it is so long ago I can't be certain."

Doughty, the clerk of the sale, testifies that the assignee announced the incumbrances set opposite the tracts in lists C and D, and spoke of mortgages and taxes, but does not remember of his mentioning judgments.

J. O. Willets, who was called and examined as a witness by both parties, swears: "I was at the bankrupt sale, 2d June, 1877. I heard Mannon make announcement of judgments. I understood him to say a judgment of $1400. He enumerated judgments I had never heard of before, and I was surprised. One was Henry Taylor, one a Bernard judgment, and others I don't know."

Bassett, the attorney of the assignee, who was present at the sale for the purpose of advising his client and seeing that everything was properly done, testifies as follows: "I was solicitor for J. M. Mannon, assignee of Wells Willets, bankrupt. Was present at the land sale on 2d June, 1877, as his adviser, and assisted to prepare a statement of the incumbrance on the estate of Wells Willets. Was there two or three days before the sale. The book and paper shown was made for use at the sale. The book is a copy of the paper made by Doughty for use at the sale. Had some slips. Some things were not on the book; taxes on Iowa lands not there. Paper and book was read prior to sale, I think. It was announced that Mannon would read the incumbrance set opposite each tract as it was offered, as far as known. It was announced that they would be sold subject to judgment of Bernard against Wells Willets and Tyler and Richmond, and costs in case of Granville Gibson and D. F. Noble, which, it was stated, was a lien on all the lands in Mercer county."

In view of all these circumstances, this would seem to be conclusive on the question. We can readily perceive how an honest witness, who attended the sale and has no recollection of the assignee having mentioned these judgments, might conscientiously swear nothing was said about them, when, in

fact, they had been expressly mentioned; but it is difficult to conceive how one could swear to such specific details as those testified to by J. O. Willets and Bassett, if not true, without being guilty of swearing corruptly. We see nothing in the case, or in the character of the statements made by them, that tends to cast the slightest suspicion upon their testimony, and the admitted circumstances, as we have already seen, strongly corroborate their recollection of the affair. In short, while the witnesses are about equally divided on this question, for reasons already stated, and others we might mention, we are of opinion the decided weight of the evidence is with the appellees, and for this reason, if for no other, we regard the equities of the case with the appellees.

Again, it will be remembered that the second judgment was not recovered until the 4th of December, 1876, and that in the month of July previous, Willets, the principal in the appeal bond upon which the judgment was obtained, was adjudged a bankrupt, and of course all means to discharge the judgment, so far as he was concerned, are presumed to have passed into the hands of his assignee, and under these circumstances, Mrs. Willets, his wife, must have known, at the time of her purchase, that if this judgment was paid, as the erroneous record then indicated, it must have been paid by her husband's sureties, in which event they would have been subrogated to the rights of Bernard or his assignee, under the first judgment. In such case, notwithstanding the satisfaction of the second judgment, the first judgment would continue in force for the benefit of the sureties. There is nothing in our recording laws, or the general principles of law relating to real property, that is in conflict with this right of sureties, under the circumstances supposed. It does not, therefore, follow, that where two judgments have been obtained, in part, against different parties, on account of the same claim, as was done in this case, that the satisfaction of one is necessarily a satisfaction of the other, within the meaning of our recording laws. Such a rule would manifestly

lead to great hardships in particular cases, without any compensating benefit. *Stiles* v. *Eastman et al.* 1 Kelley, (Ga.) 205; *Wilson* v. *Wright,* 7 Rich. (S. C.) 401; *Poe* v. *Darrah,* 20 Ala. 238; *Lintz* v. *Thompson,* 1 Head, (Tenn.) 456; *Smith* v. *Alexander,* 4 Sneed, (Tenn.) 482.

Out of the numerous authorities cited by the distinguished counsel for appellants, not one of them sustains this position, or even tends to do so, and if any such authority exists, it is not probable it would have escaped their research.

If, then, the entry of satisfaction, in cases of this kind, of one judgment does not, within the meaning of our recording laws, *ipso facto,* satisfy the other, without regard to the circumstances under which the entry of satisfaction has been made, as we have seen it does not, it follows that where both judgments do not appear of record to be satisfied, as was the case here, purchasers will buy at their peril, and we see no inconvenience or hardship in the rule. Purchasers can always readily, with little trouble, ascertain whether both judgments have, in point of fact, been actually satisfied or not. If, then, the records relating to both judgments must affirmatively show a satisfaction of both, or there must be an actual satisfaction and discharge of both, before a purchaser may safely buy, it is clear the mere erroneous entries of satisfaction of the second judgment in this case can not affect Burlingame's rights under the first.

Outside of what we have already said, so far as Burgett is concerned, he was clearly chargeable with notice, at the time of his purchase, of the erroneous entries on the record, and since, under the circumstances, Mrs. Willets can not, as we have already seen, be regarded as an innocent purchaser, he evidently has no standing in a court of equity. It will be remembered that proceedings were instituted by Burlingame to correct the record on the 30th of July, 1877, and that, on the 15th of August following, a motion was duly filed in court for that purpose, and this motion was pending on the 11th of November of the same year, being the date of Mrs.

Willets' conveyance to him. We are aware it is claimed in the petition for a rehearing, that this court fell into an error in its former opinion in making this statement, and that it is now contended that no such motion was filed till in December following, being subsequent to the conveyance by her to him, yet, as the facts then and now stated by us are clearly admitted in the bill itself, such admission must be accepted as conclusive of the matter.

In any view, therefore, we are able to take of this case, we are of opinion that the conclusion heretofore reached in it is correct.

*Judgment affirmed.*

Mr. JUSTICE SHELDON, dissenting:

I am unable to concur in the opinion of the majority of the court.

The bill in chancery in this case was brought in the circuit court of Mercer county, by Frederick P. Burgett, Peter Johnson and Ellen Johnson, to enjoin the sale, by the sheriff, of a tract of land levied upon and advertised for sale under an execution in favor of Frank H. Bernard, issued on a judgment rendered in his favor in the circuit court of Mercer county, on the 8th day of November, 1875, against George B. Tyler, Lorenzo Richmond and Wells Willets, for the sum of $1200 and costs.

The land levied on was the south-west quarter of section 18, in township 15 north, range 4 west, in Mercer county. At and before the date of the judgment it was owned by Wells Willets, and had been mortgaged by him to William L. Ewing & Co. on the first day of November, 1871. The mortgage was foreclosed and the land sold, under decree of court, to satisfy the mortgage, on May 31, 1877. On the 11th day of July, 1876, Wells Willets was declared a bankrupt, and James M. Mannon, on the first day of September, 1876, was appointed his assignee in bankruptcy, and Mannon, on the 2d day of June, 1877, as such assignee, sold the

equity of redemption of the land to Rachel C. Willets, and made her a deed thereof, which was duly recorded September 17, 1877. She was the wife of Wells Willets, and on the 14th day of September, 1877, she and her husband, Wells Willets, conveyed the land, by quitclaim deed, to Frederick P. Burgett, one of the complainants, which was recorded September 17, 1877, and Burgett, on the 11th day of November, 1877, conveyed the same land, by warranty deed, to Peter and Ellen Johnson, the other two complainants, the deed being recorded November 20, 1877. Burgett, on the 24th day of April, 1878, redeemed the land from the foreclosure sale under the William L. Ewing & Co. mortgage, by paying to the master in chancery, to do so, the sum of $3269.17. After this redemption by Burgett, and on June 28, 1878, the execution now sought to be restrained was sued out on the judgment of Bernard against Wells Willets, rendered on November 8, 1875, and levied on the land in question as subject to be sold under that judgment.

It appears, further, that Wells Willets took an appeal from this judgment of November 8, 1875, to the Supreme Court, and gave his appeal bond, with J. Orr Willets and Courtney Drury as his sureties thereon. The judgment was affirmed in the Supreme Court. Bernard then brought suit upon the appeal bond, and recovered a judgment thereon against the makers, Wells Willets, J. Orr Willets and Courtney Drury, on the 6th day of December, 1876, in the circuit court of Mercer county, for the sum of $1415.60, which was for the full amount of the first judgment of November 8, 1875, interest and costs to that time, of December 6, 1876.

Execution was issued on this last judgment of December 6, 1876, on the 13th day of January 1877, and the execution was returned satisfied by the sheriff on the 3d day of March, 1877. This return of satisfaction was subsequently set aside by order of court, on December 4, 1877, which was after all the aforenamed sales and purchases of the land had taken place.

The question presented is, whether the satisfaction of the second judgment upon the appeal bond was a satisfaction of the first judgment on the appeal from which the appeal bond was given, and whether the entry of satisfaction of the second judgment which was made was entitled to be relied upon by the subsequent purchasers as a discharge of the first judgment, and upon the faith of which, as being such a discharge, they were justified in purchasing the land in question as free from the lien of such first judgment.

The appeal bond was given as collateral security for the payment of the first judgment, so that the second judgment on the appeal bond and the first judgment were for the same thing, and the payment and satisfaction of the second judgment would be a payment and satisfaction of the first judgment. *Craft* v. *Merrill et al.* 14 N. Y. 456; Freeman on Judgments, § 467.

The sole person who appears as having any opposing interest here, is Shadrack C. Burlingame, as assignee of the judgment. On his petition he was made a party defendant to the bill, and answers it with Bernard, the judgment creditor, and the sheriff.

Burlingame sets up that Bernard sold and assigned to him both the judgments on the 31st day of January 1877, for $1426.80, and that he caused his attorney to issue the execution sought to be enjoined in this cause. Bernard answers the same as to the assignment, and that the $1426.80 was paid to him by Burlingame's note.

It appears in proof, that on January 13, 1877, an execution was issued on this second judgment. There appear indorsed upon it the following:

"March 1st, 1877, rec'd amount of judgment in full.
                           BASSETT & WHARTON."

"I return this execution satisfied 3d day of March, 1877.
                           JOHN S. PAXTON, Sheriff."

Bassett & Wharton were the plaintiffs' attorneys in the suit wherein the judgment was recovered.

Upon the judgment docket in the clerk's office of Mercer county, there was made an entry that the judgment was satisfied. On the execution docket there was the entry, in the proper column, " 3d March, 1877, ret'd satisfied." The clerk testified that these docket entries were made on the day or day after the return of the execution, March 3, 1877. The statute requires these dockets to be kept with proper columns, wherein shall be entered a note of the satisfactions of judgments and executions; and that such dockets " shall be deemed public records, and shall at all times be open to inspection, without fee or reward." Rev. Stat. 1874, p. 263.

All the above appeared by the public records of the clerk's office of Mercer county at the time Rachel Willets purchased from the assignee in bankruptcy this land, as the land of Wells Willets, on the 2d day of June, 1877, and at the time of the subsequent purchases by Burgett from her, and by the Johnsons from Burgett.

It showed of record a satisfaction of the second judgment, and upon which, as importing verity, I think these purchasers were entitled to rely as full proof of satisfaction; and this second judgment being satisfied, satisfied the first one, so that the purchasers had the right to believe the first judgment was satisfied, and that they might safely buy the land as free from the lien of that judgment; and they should be protected therefrom.

If there was error in these receipts of satisfaction and entries of satisfaction of the judgment, the loss should fall upon the judgment creditor or his assignee, through whom; or those acting in their behalf, there was caused to be produced these deceptive appearances, rather than upon those who innocently purchased in reliance upon such appearances as expressing what was true.

There is some attempt made to affect the standing of Mrs. Willets as an innocent purchaser, as having alleged notice of this first judgment at the time of the assignee's sale to her.

There were a great number of tracts of land, upwards of one hundred, sold at the assignee's sale, lying mostly in Mercer county. They were set down in a book and two separate papers. Against the tracts were set down quite a number of incumbrances which were on some of them. There was set down the Ewing & Co. mortgage, which was on this land.

Under the heading of judgments on one of the papers, there appeared among others this first judgment in favor of Bernard. There was set down in the book the following: "June 2, 1877, conditions of sale. * * * The sale is made subject to the incumbrances, which the purchaser is to pay. The assignee does not warrant title, but sells only such interest as he has as assignee of Wells Willets. The statements made in regard to the incumbrances are the best that the assignee can give, but he does not guarantee that they are perfectly correct. The purchaser takes all risk."

One witness testifies that it was announced that the lands would be sold subject to this first judgment. Another witness says the assignee made announcement of judgments,— one was this judgment.

The clerk at the sale testifies that he has no recollection of the assignee speaking of or announcing any judgments,— that he did not hear the Bernard judgment mentioned. The assignee himself says he read the conditions of sale, and thinks he advised those present of taxes and judgments, but it was so long ago he can not say certain that when he offered a tract he announced the incumbrance set opposite in the list, and thinks judgments were mentioned, but could not be certain, it was so long ago. Four other witnesses testify that they were present to buy lands, paid attention to all that was said, and that neither this or any other judgments were spoken of. This is in substance all the evidence in respect of any notice of the judgment.

It is not perceived that anything more can be made out of this testimony, than that perhaps those present at the sale were apprised of the existence of this judgment.

This was but a fact which the public records showed, of which purchasers would be presumed to have notice, and actual notice would lend no increased effect to the constructive notice of the judgment. There is no pretence that anything was said as to the second judgment being satisfied or not, or as to the entry of its satisfaction being erroneous or not, or that anything whatever was said in regard thereto. Purchasers might have knowledge of the existence of the first judgment, and that it stood unsatisfied of record, and yet, knowing that the second judgment was satisfied, or entry of its satisfaction made, innocently buy, upon the faith that the satisfaction of the second judgment rendered null the first one, and that they would take the land purchased free from any lien of such first judgment.

It is further claimed, that as notice was served on the judgment defendants on July 30, 1877, of the motion to be made to set aside the entry of satisfaction, this was in the nature of a *lis pendens,* and that the complainants should be affected with notice as purchasers *pendente lite.* Without stopping to inquire whether that doctrine is applicable in such a case as this, it is enough to say, that if it were, it could not apply to Rachel Willets, as her purchase was some time before, namely, on June 2, 1877, and if her purchase was without notice and before any *lis pendens,* it would not matter as to the subsequent purchasers,—they would be protected by her purchase. But then it is said, Wells Willets, the judgment debtor, could not himself take advantage of the erroneous entry of satisfaction, and the assignee in bankruptcy took his rights, and none greater, and that the purchaser from the assignee at the public judicial sale, made under order of the United States District Court, could take no higher right than that of the party whose interest was sold. But it is another principle which governs this case.

Had the judgment creditor, or his assignee of the judgment, at the time of such public sale, made an actual representation to the purchaser that the judgment was paid, and the purchase was made in reliance upon the representation being true, it would not be permissible afterward to set up against the purchaser that the judgment was unsatisfied, and therefrom claim a judgment lien upon the land bought. Of equivalent import and effect in this case may be regarded the declaration of the public record that this judgment was satisfied.

What the alleged error was in this receipt and entry of satisfaction of the judgment, we are unapprised by the record.

The attorney who wrote upon the execution the receipt of the amount of the judgment in full, testifies, that the sheriff said he had an execution he wanted receipted; witness inquired if it was paid, and the sheriff said it was, witness thinks; he looked at the title of the case and receipted it; afterwards, some time, the sheriff talked about commissions, and then witness remembered he had receipted wrongfully. The notice of the motion to set aside the receipt and entry of satisfaction, states the same to be "an error, and incorrect." The court simply allowed the motion without stating any cause. This is all that appears upon the subject.

There appear to have been written assignments of both judgments made by Bernard, the judgment creditor, to Burlingame, dated January 31, 1877, and recorded in the recorder's office of Mercer county, in a volume of deeds, one on December 12, 1877, the other on October 2, 1878, the assignments severally reciting the appeal from the first judgment, the giving of the appeal bond thereon, the affirmance of the judgment, and that the second judgment was on the appeal bond. There is no evidence that either of the purchasers of the land had any notice of these assignments. When the assignments were made, and the money paid on account of them, Basset & Wharton state that their relation as attorneys closed with Bernard. But none of these

purchasers knew of this.   Basset & Wharton still appeared of record as attorneys of Bernard, and the purchasers had ·a right to presume authority on the part of the attorneys to cause satisfaction of the judgment.   In general, the attorney on record in a suit is authorized by his retainer to receive the money for which judgment is recovered, and upon its receipt acknowledge satisfaction of the judgment.   *Steward* v. *Biddlecum*, 2 Comst. 103; Freeman on Judgments, sec. 462.

It is not perceived that the assignment of the judgments to Burlingame, of which there was no notice to the parties concerned, affects the case in any way.

That the setting aside of the return and entry of satisfaction, December 4, 1878, should not affect intermediate purchasers, see *McCormick* v. *Wheeler, Mellick & Co.* 36 Ill. 114. It was in that case said, that the return of the sheriff was a public record, and that "the public is bound by the record of a court, and on the other hand it has the right to abide by it." See, also, *Shirley* v. *Phillips et al.* 17 Ill. 471.   It was there said, these judgment and execution dockets "are public records of the court, to which all have access, and operate as notice of what they contain."

And that, where there has been a mistaken entry of satisfaction of record of a mortgage, a purchaser without actual notice of the mistake will take a title clear of the mortgage, see *Ayers* v. *Hays,* 60 Ind. 452.

*Page* v. *Benson et al.* 22 Ill. 484, was a case much like the present.   There a judgment was secured by a chattel mortgage on a building.   The judgment creditor assigned the judgment and mortgage to Page.   After this, on direction of the original judgment creditor, through mistake or fraud, and without payment, the sheriff returned the execution on the judgment satisfied.   Afterward the judgment debtor made a second mortgage of the same property covered by the first mortgage.   Subsequently, on application of Page, the court set aside the entry of satisfaction of the judgment, and Page then filed his bill to have the mortgaged property declared

subject to the lien of the first mortgage, which had never been discharged of record, and for its satisfaction. The court below dismissed the bill, and this court affirmed the decree. It was there said: "All who were not chargeable with notice of the assignment of the judgment, were justified in assuming that the judgment creditors were still the equitable owners of the judgment and first mortgage. And when they entered satisfaction of the judgment, or caused the execution to be returned satisfied, everybody ignorant of the assignment had a right to buy or treat the property as released from the first mortgage, which was given to secure that judgment."

SCHOLFIELD, J: I concur in the foregoing.

CRAIG, J: I concur in this dissenting opinion.